IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| OLYMPIA ROSARIO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEFFREY WANDS, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 1:09-cv-663 (AJT/TCB) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion to Dismiss Under Rule 12 of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim. For the reasons stated below and in open court on September 11, 2009 at the hearing on Defendant's motion, the court lacks personal jurisdiction over the Defendant and Defendant's Motion to Dismiss is granted.

### I. BACKGROUND

On June 16, 2009, Plaintiff Dr. Olimpia Rosario filed a four count Complaint against Defendant Jeffrey Wands, "in his individual and corporate capacity," alleging: (1) actual fraud; (2) constructive fraud; (3) negligence; and (4) breach of fiduciary duty.

The Complaint alleges the following facts. Dr. Rosario is a psychiatrist who resides and works in the Commonwealth of Virginia. Compl. at ¶ 1. Mr. Wands, a self-proclaimed professional psychic, is the sole owner, shareholder, and operator of Psychic Eye Media, Inc., a New York based corporation. *Id.* at ¶¶ 6-7. Mr. Wands has had no training in psychology or substance abuse issues, is not qualified to proffer professional advice on trauma, and holds no

1

degree or license to practice any type of healing art, medicine, counseling, or social work in Virginia or New York. *Id.* at ¶¶ 8-9.

In 1995, Mr. Wands correctly predicted that Dr. Rosario would obtain a residency in a New York-based hospital. *Id.* at ¶ 10. After that "prediction," Dr. Rosario became a "believer" in Mr. Wands' abilities. For the next twelve years, Mr. Wands counseled Dr. Rosario on a wide range of issues, routinely charging Dr. Rosario for his services. *Id.* at ¶¶ 10-11, 19.

In the beginning of 2007, Mr. Wands began to counsel Dr. Rosario on her mental and emotional state and her "claimed use" of alcohol and drugs. *Id.* at ¶ 12. In the fall of 2007, Dr. Rosario began to suffer from severe stress, exhaustion, and growing psychosis. *Id.* at ¶ 13. Mr. Wands began to discuss past trauma and substance abuse, as well as deeply personal spiritual issues, with Dr. Rosario. *Id.* at ¶¶ 14-15.

At some point during 2007, Mr. Wands began to flirt with Dr. Rosario, declaring that he would pursue Dr. Rosario romantically if he were not married and telling her she was his soul mate. Mr. Wands and Dr. Rosario set up an in-person meeting in December 2007. *Id.* at ¶¶ 16-17. Before the in-person meeting could occur, Dr. Rosario suffered a major mental health episode, during which she became manic. *Id.* at ¶ 18. Dr. Rosario began communicating with Mr. Wands frequently, disjointedly, and urgently. *Id.*

Mr. Wands became concerned by his involvement with Dr. Rosario, and went to the Port Washington, New York Police Department to accuse Dr. Rosario of criminal conduct. Mr. Wands informed the police that he was counseling Dr. Rosario for substance abuse, including prescription drug use. *Id.* at ¶¶ 20-21. After making his report to the police, Mr. Wands caused information to be sent to the Virginia Board of Medicine. *Id.* at ¶ 24.

The Complaint alleges that Mr. Wands, by acting as a medical provider and counselor, by luring Dr. Rosario into his confidence, and by never advising Dr. Rosario to seek treatment, caused Dr. Rosario's condition to worsen and interfered with Dr. Rosario's ability to obtain competent medical attention. *Id.* at ¶¶ 28-30. The Complaint further alleges that Dr. Rosario has never abused prescription drugs. *Id.* at ¶ 23.

On August 10, 2009, Mr. Wands filed a Motion to Dismiss Under Rule 12 of the Federal Rules of Civil Procedure. In his motion, Mr. Wands argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because Mr. Wands lacks minimum contacts with Virginia. In the alternative, Mr. Wands argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. On August 28, 2009, Dr. Rosario filed her opposition to Mr. Wands' Motion to Dismiss. A hearing was held on September 11, 2009 on Defendant's motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks personal jurisdiction. The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is challenged by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Jones v. Frazier*, No. 1:09-cv-513, 2009 WL 2601355, at *3 (E.D. Va. Aug. 18, 2009). If, however, as is the case here, the court decides the jurisdictional question based solely on the motion papers, supporting legal memoranda, and the relevant allegations of the complaint, the plaintiff need only prove a *prima facie* case of personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Jones*, 2009 WL 2601355, at *3. In deciding whether the plaintiff has proved a *prima facie* case, "the court must

3

construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

### III. ANALYSIS

Mr. Wands argues that the claims against him must be dismissed because Dr. Rosario has not made a *prima facie* showing of personal jurisdiction. Dr. Rosario argues that she has made such a showing based primarily on Mr. Wands' website, available in Virginia, his telephone conversations with Dr. Rosario while she was located in Virginia, and his communications with the Virginia Board of Medicine.

To determine whether personal jurisdiction over a non-resident defendant exists, the Court must engage in a two-part analysis. First, the Court must determine whether Virginia law authorizes jurisdiction. Next, the plaintiff must establish that the defendant has "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," so that personal jurisdiction over the non-resident defendant comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984).

Under the Due Process framework, a non-resident defendant may be subject to either general or specific jurisdiction. To establish general jurisdiction, the defendant's activities must be "continuous and systematic" in the state and the plaintiff must demonstrate "fairly extensive" minimum contacts with Virginia. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *Flexible Benefits Council v. Feltman*, No. 1:08-cv-371, 2008 WL 2465457, at *3 (E.D. Va. June 16, 2008); *Jones*, 2009 WL 2601355, at *2. Specific personal jurisdiction exists when

4

a defendant "purposefully directed his activities at the residents of the forum" and the plaintiff's causes of action "arise out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Under Fourth Circuit law, in determining whether specific jurisdiction should be asserted, a court should consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

In her opposition, Dr. Rosario cites three provisions of Virginia's long-arm statute, Va. Code § 8.01-328.1, that she argues confer personal jurisdiction over Mr. Wands: (1) Va. Code Ann. § 8.01-328.1(A)(1), "Transacting any business in this Commonwealth"; (2) § 8.01-328.1(A)(3), "Causing tortious injury by an act or omission in this Commonwealth"; and (3) § 8.01-328.1(A)(4), "Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Because Virginia's long arm statute has been construed to extend personal jurisdiction to the full extent permitted by the Due Process Clause, the "statutory and constitutional inquiries coalesce into the question of whether [Defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements." *Capital One Bank (USA) N.A. v. Hess Kennedy Chartered LLC*, No. 3:08-cv-147, 2008 WL 2660973 (E.D. Va. July 3, 2008); *Flexible Benefits Council v. Feltman*, No. 1:08-cv-371, 2008 WL 2465457, *3 (E.D. Va. June 16, 2008). Nevertheless, it is possible for the contacts of a non-resident defendant to satisfy due process requirements but not fall under the purview of the Virginia long-arm statute. *Flexible Benefits Council*, 2008 WL 2465457, at *3.

5

In support of jurisdiction, Dr. Rosario argues that Mr. Wands has conducted regular systematic and continuous business in Virginia for seven years. Mem. in Opp. at 6. She alleges that that Mr. Wands maintains a website that is accessible nationwide, including by citizens of Virginia, *Id.* at 4; that Mr. Wands has obtained substantial revenue of at least $700 a year from Dr. Rosario, *Id.*; and that for seven years, Mr. Wands and Dr. Rosario participated in quarterly telephone discussions together, establishing an on-going business relationship, *Id.* at 2. Dr. Rosario argues further that Mr. Wands' tortious conduct caused harm to her in Virginia. *Id.* at 5.

On the other hand, Mr. Wands argues that he has never advertised or solicited for his services in the commonwealth. He admits that he maintains a website that is accessible nationwide, but contends that he has not directed the internet activity to Virginia in any way. Mem. in Supp. of Motion at 4. Mr. Wands also admits that he generated revenue from Dr. Rosario while she resided in Virginia, but there is no evidence that he generated "substantial" revenue from contacts in Virginia, as is required by the Virginia long-arm statute.[1] Mem. in Supp. of Motion at 6. Next, Mr. Wands contends that he did not initiate contact with Dr. Rosario. Mem. in Supp. of Motion at 4 (citing *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986) ("The significant contacts considered are those actually generated by the defendant")). Rather, based on Dr. Rosario's affidavit submitted with her opposition to Mr. Wands' Motion to Dismiss, Dr. Rosario's relationship with Mr. Wands was established in New York and Mr. Wands communicated with Dr. Rosario in Virginia only because she chose to

---

[1] Dr. Rosario has not established that Mr. Wands derived substantial revenue from Virginia. *Taltwell, LLC*, No. 3:07-cv-543, 2007 WL 4562874, at *5 (E.D. Va. Dec. 20, 2007) ("When the quantity of goods sold into the forum state is a small percentage of the defendant company's nationwide sales, the 'substantial revenue' test may be satisfied . . . if [the revenue derived from the forum state] exceeds the state's per capita share of substantial nationally derived revenue").

relocate to Virginia. *Id.*; Mem. in Opp. Exh. 2 (Rosario Affidavit) at ¶¶ 2, 5. Finally, he argues that he never visited Virginia for the purpose of advancing his business. Mem. in Supp. of Motion at 4.

First, Dr. Rosario has made no showing sufficient to make out a *prima facie* case of general jurisdiction. Mr. Wands' website through which Dr. Rosario claims Mr. Wands "touts his national following" and advertises nationally does not establish his "presence" in Virginia sufficient form a basis for personal jurisdiction. Mem. in Opp. at 4; *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ("a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted"). Dr. Rosario has not alleged that Mr. Wands' website is in any way interactive or that users can conduct transactions through the website. In fact, the "screenshots" from Mr. Wands' website that Dr. Rosario attaches as Exhibit 1 to her opposition support a finding that Mr. Wands' website is passive. Moreover, Dr. Rosario has not alleged any facts to establish that Mr. Wands had the "manifest interest" of targeting citizens of Virginia through his website. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 400 (4th Cir. 2003). Therefore, Mr. Wands' website does not serve as a basis for conferring personal jurisdiction. Nor are any of Mr. Wands' other alleged contacts with Virginia sufficient to establish general jurisdiction. There is no evidence of any contacts with Virginia other than through Dr. Rosario; and these contacts are hardly the kind of "continuous and systematic" activities that confer general jurisdiction.

The only possible remaining basis for finding personal jurisdiction over Mr. Wands is through specific personal jurisdiction which requires that Dr. Rosario's claims arise out of Mr. Wands' contacts with Virginia and those contacts are constitutionally sufficient. Both parties

agree that the parties' relationship was first initiated and established in New York, when Dr. Rosario resided there, and that Mr. Wands was never present in Virginia when he provided services to Dr. Rosario. Instead, they communicated over the telephone and through e-mail. Generally, "[m]ere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction." *Superfos Investments v. FirstMiss Fertilizer*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991). Even so, "[s]o long as a commercial actor's efforts are 'purposefully directed' towards residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Capital One Bank*, 2008 WL 2660973, at *2 (quoting *Burger King*, 411 U.S. at 472). The inquiry, then, is whether Mr. Wands "purposely availed [himself] of the privilege of conducting activities" in Virginia. *Consulting Eng'rs Corp.*, 561 F.3d at 278. In making that determination, the Court must consider whether Mr. Wands directed his activities at Virginia "in more than a random, fortuitous, or attenuated way." *Allen v. James*, 381 F. Supp. 2d 495, 497 (E.D. Va. 2005).

*Stover v. O'Connell Associates, Inc.*, 84 F.3d 132 (4th Cir. 1996), is instructive. In *Stover*, the Fourth Circuit considered whether a non-resident private investigation firm had sufficient contacts with the state for a federal court in Maryland to exercise jurisdiction over it. In that case, the defendant occasionally telephoned Maryland investigation firms to request information about the plaintiff and the Maryland-based firms then provided the defendant with that information. Affirming the district court's dismissal of the case based on lack of personal jurisdiction over the non-resident defendant, the court found that the defendant could not "reasonably have anticipated being 'haled into court'" in Maryland, and that it would

"contravene the Due Process Clause" to find personal jurisdiction based on the limited contact, none of which occurred with defendant physically present. *Stover*, 84 F.3d at 173.

Similarly, in *Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1996), the court found it lacked personal jurisdiction over out-of-state attorney defendants where the defendants' actions were not directed at the state, but resulted only from the mere and fortuitous fact that the plaintiff resided there. The court held that "providing out-of-state . . . representation is not enough to subject an out-of-state lawyer or law firm to personal jurisdiction of the state in which a client resides." The fact that the plaintiff was a resident of Maryland, in light of the defendants' minimal contacts with the state, was insufficient to permit exercise of personal jurisdiction. *Id.* In contrast, in *Allen*, another case involving out-of-state attorney defendants, the court found that the defendant lawyers' telephone and other types of communications to plaintiff were directed at Virginia in more than just a random or fortuitous way and that personal jurisdiction was appropriate. *Allen*, 381 F. Supp. 2d at 497. In that case, the lawyer defendants agreed to represent a plaintiff in a case involving a car accident that occurred in Virginia, knowing that the case would likely have to be filed in Virginia courts and that the defendants would have to retain Virginia counsel for that purpose. Thus, the court found that the substance of defendants' relationship with their client involved availing themselves of the privilege of conducting business in the state.

Here, as in *Stover* and *Maur*, Mr. Wands has contacts with Virginia only because his client lives there, an arguably random and fortuitous fact, brought about by Dr. Rosario herself after she established her relationship with Mr. Wands in New York and entirely unrelated to the substance or purpose of their relationship. Moreover, Mr. Wands participated in only four telephone calls a year with Dr. Rosario (though they continued for seven years after Dr. Rosario

9

moved to Virginia).[2] There are no allegations that Mr. Wands visited Dr. Rosario in Virginia. Finally, Dr. Rosario's allegation in the Complaint that Mr. Wands "caused" information of her alleged drug addiction to be sent to the Virginia Board of Medicine, while relevant to the specific personal jurisdiction analysis concerning her breach of fiduciary duty claim, is not sufficient to establish a *prima facie* case of personal jurisdiction since the Complaint alleges only that Mr. Wands breached his fiduciary duty by contacting the police department in New York. Compl. at ¶ 62.

Based on the record before the Court, it cannot be said that Mr. Wands has a general presence in Virginia or that he "purposely availed [himself] of the privilege of conducting activities" in Virginia. Accordingly, Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Mr. Wands. Because this Court finds it lacks personal jurisdiction over Mr. Wands, the Court does not address Mr. Wands' alternative grounds for dismissal for failure to state a claim.

---

[2] While there is no set number of contacts that are sufficient to confer personal jurisdiction, courts have explained that to constitute a persistent course of contact sufficient to satisfy the Virginia long-arm statute and, by extension, the constitutional requirements, a plaintiff must show "at a minimum, . . . some sort of ongoing interaction with the forum state," including the acts that give rise to the claims at issue. *Robinson v. Egnor*, 699 F. Supp. 1207, 1212 (E.D. Va. 1988). In *Robinson*, the defendant, a United States Marshal, communicated with the Marshals Service Headquarters in Virginia approximately fifty times in about a year. Further, the defendant's contact was ongoing because the nature of his job required ongoing communication with that office in Virginia. This, the court held, constituted ongoing and continuous contact and a persistent course of conduct in Virginia. *Id.* at 1212-13; *see also Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 373-74 (4th Cir. 1985) (fact that non-resident defendant company that received 57 orders in seventeen month period from Virginia customers, filled those orders, and received payments from customers was sufficient to establish that the defendant engaged in a persistent course of conduct); *First American First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511 (4th Cir. 1986) (personal jurisdiction proper over non-resident non-profit defendant that made bi-monthly mailings of its journal and annual mailings of its national directory to its 1,150 Virginia members).

## IV. CONCLUSION

For these reasons and the reasons stated in open court, Defendant's Motion to Dismiss Under Rule 12 of the Federal Rules of Civil Procedure is granted and Plaintiff's Complaint is dismissed.

An appropriate Order will issue.

/s/ Anthony J. Trenga
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
September 17, 2009